MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
MAYA SORENSEN (State Bar No. 250722)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, California94612
Telephone: (510) 452-5500
Facsimile: (510) 452-5510

Attorneys for Plaintiff
Ian Smith

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUKE SMITH, Deceased, through his Successor in Interest, IAN SMITH, individually and as successor in interest for LUKE SMITH, Deceased, <br><br> Plaintiff, <br> vs. <br><br> COUNTY OF SANTA CRUZ, a public entity, SANTA CRUZ COUNTY SHERIFF JAMES HART, SANTA CRUZ COUNTY SHERIFF'S DEPUTY CHRIS VIGIL; CITY OF CAPITOLA, a public entity, CAPITOLA POLICE OFFICER PEDRO ZAMORA; CITY OF WATSONVILLE, a public entity, WATSONVILLE POLICE OFFICER NOE HERNANDEZ, and DOES 1-10, Jointly and Severally, <br><br> Defendants. | No: <br><br> **COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL** |

Plaintiff, by and through his attorneys, HADDAD & SHERWIN LLP, for his Complaint against Defendants, states as follows:

## JURISDICTION

1.      This is a civil rights, wrongful death, and survival action arising from Defendants' wrongful shooting, use of excessive force and recklessly provocative tactics, resulting in the death of LUKE SMITH, Deceased, on or about November 19, 2016 at or near 350 Varni Road in Corralitos in rural unincorporated Santa Cruz County, California.  This action is brought pursuant to 42 USC §§ 1983 and 1988 and the Fourth, First, and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of California, including but not limited to California Civil Code §§ 52.1, and California common law.  Jurisdiction is founded upon 28 USC §§ 1331 and 1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions.  Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 USC §1367 to hear and decide claims arising under state law.

## INTRADISTRICT ASSIGNMENT

2.      A substantial part of the events and/or omissions complained of herein occurred in Santa Cruz County, California, and this action is properly assigned to the San Jose Division of the United States District Court for the Northern District of California.

## PARTIES AND PROCEDURE

3.      Plaintiff IAN SMITH is the father of decedent, LUKE SMITH, and a resident of the State of California.  Plaintiff IAN SMITH brings these claims individually for violation of his personal rights and as Successor in Interest to LUKE SMITH.  Plaintiff IAN SMITH is LUKE SMITH's Successor in Interest with standing to bring a survival claim under California and federal law.

4.      Plaintiff IAN SMITH brings these claims individually and on behalf of Decedent LUKE SMITH pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq. which provide for survival and wrongful death actions.  Plaintiff also brings his claims on the basis of 42 USC §§ 1983 and 1988, the United States Constitution, and federal civil rights law.  Plaintiff also brings these claims as Private Attorney General, to vindicate not only his rights, but others' civil rights of great importance.

5.      Defendant COUNTY OF SANTA CRUZ is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls the Santa Cruz County Sheriff's Office (SCCSO) which employs other defendants in this action.

6.      Defendant Santa Cruz Sheriff, KEVIN JAMES HART ("SHERIFF HART") at all material times was employed as Sheriff of the SCCSC by Defendant COUNTY OF SANTA CRUZ, and was acting within the course and scope of that employment.  As Sheriff of SCCSC, Defendant HART was a policy-making official for Defendant COUNTY OF SANTA CRUZ with the power to make official and final policy for the SCCSO.

7.      Defendant DEPUTY CHRIS VIGIL ("VIGIL") at all material times was employed as a Sheriff's deputy by Defendant COUNTY OF SANTA CRUZ, and he was acting within the course and scope of that employment.

8.      Defendant CITY OF WATSONVILLE is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls the Watsonville Police Department (WPD) which employs other defendants in this action.

9.      Defendant OFFICER NOE HERNANEZ ("HERNANDEZ"), on information and belief, at all material times was employed as a police officer by Defendant CITY OF WATSONVILLE, and he was acting within the course and scope of that employment.

10.    Defendant CITY OF CAPITOLA is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls the Capitola Police Department (CPD) which employs other defendants in this action.

11.    Defendant OFFICER PEDRO ZAMORA ("ZAMORA") at all material times was employed as a police officer by Defendant CITY OF CAPITOLA, and he was acting within the course and scope of that employment.

12.    **Despite Plaintiff's multiple requests for records, Defendants have not provided Plaintiff or his representatives with information concerning this shooting, including all the names of the involved police officers and deputies, any police reports, records of any investigation, or recordings of this incident.  Defendants COUNTY OF SANTA CRUZ, CITY OF CAPITOLA, and CITY OF WATSONVILLE have retained complete control of virtually all information concerning this shooting that happened out in the country in the middle of the night, and Defendants have concealed the names of most involved officers/deputies, and have affirmatively prevented Plaintiff from learning information by which to more thoroughly plead his claims.**  As a result, the true names and capacities of Defendants sued herein as DOES 1–10 ("DOE defendants") are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names, and Plaintiff will seek leave to amend this Complaint to show their true names and capacities when the same are ascertained.  Each DOE defendant was an employee/agent of the COUNTY OF SANTA CRUZ and the SCCSO, the CITY OF CAPITOLA and the CPD, and/or the CITY OF WATSONVILLE and WPD, and at all material times acted within the course and scope of that relationship.

13.    Plaintiff is informed and believes and thereon alleges that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiff.

Further, one or more DOE defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including DOE Defendants.

14.     Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.  Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

15.     At all material times, each Defendant was jointly engaged in tortious activity, and had fundamental involvement and was an integral participant to the events and violations of rights described herein, resulting in the deprivation of Plaintiff's and Decedent's constitutional rights and other harm.

16.     The acts and omissions of all Defendants as set forth herein were at all material times pursuant to the actual customs, policies, practices and procedures of the SCCSO, CPD, and WPD.

17.     At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

18.     Plaintiff timely and properly filed tort claims pursuant to Cal. Gov. Code § 910 et seq., and this action is timely filed within all applicable statutes of limitation.

19.     This Complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2).

## **GENERAL ALLEGATIONS**

20.     Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

21.     On or about November 19, 2016, at about 3:15 a.m., a member of the SCCSO, Defendant Deputy VIGIL, fatally shot LUKE SMITH (Decedent) on Varni Road in Corralitos which is in the County of Santa Cruz.  Defendant VIGIL shot Decedent with a single round to the back from an AR-15 assault rifle without giving any warning.  LUKE SMITH was fifteen years old when he died.

22.     Some hours before he was shot and killed, Luke Smith ingested a controlled substance, on information and belief, LSD.  He was apparently hallucinating and stabbed his father and uncle, then fled his father's house.  The Santa Cruz County Sheriff's Office requested assistance from the Capitola Police Department, and the Watsonville Police Department.  Defendant law enforcement officers from the SCCSO, CPD, and WPD responded and found Luke Smith in the vicinity of Pioneer Road near 350 Varni Road in Corralitos in rural unincorporated Santa Cruz County.  Dispatch told all Defendants that Luke Smith had taken LSD.  Luke Smith was carrying a pocket knife with a four-inch blade.  By the time Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 first encountered Luke Smith, they each knew that (1) he was fifteen years old; (2) he had no significant criminal history; (3) other than the incident that evening, he had no history of violence; and (4) he was temporarily emotionally and mentally disturbed due to ingestion of a hallucinogen.

23.     At all times, Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 were working as a team, each providing armed back-up to the others, each working toward their shared mission to apprehend LUKE SMITH -- but without an appropriate plan or supervision, and without following their training and generally accepted law enforcement standards for handling a mentally

disturbed person.  At all material times, Defendant VIGIL was armed with a lethal AR-15 assault rifle and handgun; Defendant HERNANDEZ was armed with his handgun and a 40 mm "less lethal" projectile gun; Defendant ZAMORA was armed with his handgun and a trained police canine; Defendant DOES 1-10 were each armed with handguns, and several of them also used against LUKE SMITH Tasers and additional 40 mm projectile guns.  Further, Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10's fundamental involvement and integral participation in this incident included each one personally using significant, unjustified force against LUKE SMITH, either with his/her firearm, Taser, 40 mm projectile gun, or police canine.  Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10's were integral participants in the unjustified uses of force described herein, including the conduct and decisions in the preceding several minutes that led to the shooting and subsequent uses of force.

24.    Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 each had been trained, since their police academies, in generally accepted law enforcement standards and de-escalation tactics for safely handling and apprehending an armed, mentally and/or emotionally disturbed person.  Those generally accepted standards and de-escalation tactics include: to request back-up; to request and/or wait for a supervisor to come to the scene if possible; to have the supervisor (or if a supervisor is unavailable, then a lead officer) take the lead in coordinating and communicating an appropriate plan by all officers; to contain the mentally disturbed individual at a safe distance for officers, the individual, and others; to communicate with the individual through a single officer; to speak calmly and in a non-threatening manner with the individual to try to engage the individual in a dialog; to avoid threatening or frightening the individual with unnecessary display or use of weapons; to avoid issuing conflicting commands to the individual; to use time to communicate with the individual and to allow the individual time to understand, de-escalate, and calm down; to avoid officers placing themselves in zones of danger or in positions where officers

cannot retreat if necessary; to avoid provoking the individual with premature and/or unnecessary uses of force or aggressive tactics; and to avoid officers creating the situation where deadly force is used; to remember that a person having a mental health crises is not a criminal and that different tactics are necessary rather than resorting to significant force against a mentally disturbed person. [1]

25.     The Santa Cruz County Sheriff's Office has released portions of the body camera videos that recorded the incident.  On information and belief, Defendants have additional videos that have not been released to the public or to Luke's family.  Defendant VIGIL's body camera captured some of the ensuing events and the times when they occurred.  Two unidentified Capitola Police officers' body cameras captured the shooting and aftermath, without displaying the time.

26.     Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 encountered LUKE SMITH in the vicinity of Varni Road, in Corralitos, which is a very rural area with no other people nearby or close enough to ever be threatened by LUKE SMITH.

27.     At about 3:03:37 a.m., one of the defendant law enforcement officers, on information and belief Defendant VIGIL, yelled out to LUKE SMITH to "drop the knife, buddy!"  At about 3:06:31 a.m., one of the officers, on information and belief Defendant VIGIL, identified himself as law enforcement and began speaking with LUKE SMITH over a patrol car's PA system, telling him that the Defendant law enforcement officers wanted to help him, and that he needed to put the knife down first.  Defendant VIGIL began calmly talking to LUKE SMITH; at about 3:07:43 a.m.,

---

[1] *Deorle v. Rutherford*, 272 F.3d 1271, 1282-83 (9th Cir. 2001), *cert. denied*, 536 U.S. 958 (2002) ("Even when an emotionally disturbed individual is 'acting out' and inviting officers to use deadly force to subdue him, the governmental interest in using such force is diminished by the fact that the officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual. We do not adopt a per se rule establishing two different classifications of suspects: mentally disabled persons and serious criminals. Instead, **we emphasize that where it is or should be apparent to the officers that the individual involved is emotionally disturbed, that is a factor that must be considered in determining, under *Graham*, the reasonableness of the force employed.**").

Defendant VIGIL asked LUKE SMITH if he had used any drugs tonight; the boy responded that he had taken LSD.  At about 3:08:43 a.m., Defendant VIGIL told LUKE SMITH over the PA system: "We know you're under the influence.  LSD's a tough thing, 'cause it's hard to differentiate between reality and what's not, right?  So let's take this nice and slow, OK?"

28.     Defendant VIGIL, however, did not take it "nice and slow," as he had been trained and as generally accepted law enforcement standards required.  Seconds later, at 3:09:11, Defendant VIGIL commanded "Taser, Taser;" however, an unidentified defendant law enforcement officer yelled "Less Lethal!  Less Lethal!" before an officer, on information and belief Defendant HERNANDEZ, fired a 40 mm round at the teenager, striking him, at about 3:09:13.  The defendant law enforcement officer (on information and belief, Defendant HERNANDEZ) who fired the 40 mm round gave no warning before firing it, despite time and an opportunity to do so.  At about 3:09:17, multiple defendant law enforcement officers, including Defendant VIGIL, yelled at LUKE SMITH to drop the knife.  An unidentified Defendant law enforcement officer (not Defendant VIGIL) commanded "Less lethal!, Less lethal;" and, at about 3:09:21, an unidentified defendant law enforcement officer (on information and belief, Defendant HERNANDEZ) fired a second 40 mm round at the boy, again without warning.  Unidentified Defendant DOE law enforcement officers yelled at LUKE SMITH to drop the knife; at about 3:09:27, an unidentified defendant law enforcement officer (on information and belief, Defendant HERNANDEZ) fired a third 40 mm round at LUKE SMITH, again without warning.

29.     There was still no sergeant or supervisor on scene, although Defendants had LUKE SMITH contained and there was plenty of time for a supervisor to arrive to plan and lead the officers' coordinated response.

30.     Next, Defendant VIGIL discussed with other Defendant officers over the radio that they currently had a shield available with which to safely approach LUKE SMITH if necessary.

Without utilizing the shield, at about 3:10:01, Defendant VIGIL announced to the other Defendant law enforcement officers on scene, "let's move up."  At about 3:12:06, Defendant VIGIL told LUKE SMITH twice, over the PA system, "Lucas, it's the Sheriff's office, we need you to come out with your hands up."  Defendant VIGIL, and another unidentified defendant law enforcement officer, began repeatedly commanding LUKE SMITH to come out to the road – closer to where officers were positioned.  At approximately 3:14:15, LUKE SMITH obeyed officers' commands to drop the knife; then on information and belief, he picked it up again.

31.     Defendant VIGIL told LUKE SMITH to "stand by the line;" the teenager was contained and sitting in tall vegetation on a small but steep hill by the side of the road.  Defendant VIGIL told the other Defendant law enforcement officers on scene: "we can't see his hands, don't move up."  Nevertheless, Defendant VIGIL then announced: "we're ready to deploy the canine, I've got lethal coverage."  Despite Defendant VIGIL'S statement "don't move up," a canine handler, on information and belief Defendant Capitola Police officer PEDRO ZAMORA, began walking with his canine *Kato*, and two other Defendant law enforcement officers, towards LUKE SMITH.  Two other Defendant law enforcement officers also approached the teenager, who was still sitting in tall vegetation on the roadside.

32.     LUKE SMITH slowly rose to his feet while facing the Defendant law enforcement officers, showing his hands in an attempt to surrender.  Defendant law enforcement officers were far enough away that the boy could not have harmed them.  Then, a second after LUKE SMITH had stood up, without warning an unidentified Defendant law enforcement officer fired a Taser in dart mode at the boy.  Simultaneously, a Defendant law enforcement officer, on information and belief Capitola Police Department Officer Defendant PEDRO ZAMORA, without warning deployed his canine *Kato* while on an approximate 8 foot leash to attack and bite LUKE SMITH, and an unidentified Defendant law enforcement officer, without warning, shot another 40 mm less lethal

round at the boy.  Predictably, LUKE reacted to this overwhelming, excessive, unnecessary force including multiple intermediate and severe levels of force capable of causing great bodily injury, by recoiling in pain, away from the officers and the dog.  Approximately 8-9 officers including Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES formed a semi-circle and continued to move closer to LUKE, as LUKE flailed from the use of the Taser, the powerful 40 mm impact rounds, and the police dog that was biting him ferociously.  Approximately 8-9 Defendant law enforcement officers continued to advance, with no apparent fear for their safety, toward LUKE SMITH, who was staggering around with canine *Kato* latched onto his arm.  A witness reportedly heard LUKE SMITH saying, "OK, OK, OK" seconds before he was shot with a bullet.  Then at approximately 3:15 a.m., without warning—and only nine seconds after LUKE SMITH had stood up— Defendant VIGIL fired, without warning, a single round from his AR-15, striking LUKE SMITH in the back.  The assault rifle bullet struck LUKE SMITH "on the posterosuperior aspect of left shoulder," according to the County of Santa Cruz Sheriff-Coroner Autopsy Report.  The bullet "completely transected" LUKE's spinal cord in the area of his fourth or fifth thoracic vertebrae, rendering him instantly paralyzed.  The teenager immediately crumpled to the ground and lay motionless, obviously incapacitated and severely wounded.

33.     Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 stood around and watched, pointing guns at LUKE SMITH, who lay prone and mortally wounded, commanding him to "drop the knife!"  About 20 seconds after Defendant VIGIL had shot the boy with his AR-15— and as LUKE SMITH lay bleeding, paralyzed, and motionless on the ground—a Defendant law enforcement officer (on information and belief, Defendant HERNANDEZ) without warning shot LUKE SMITH with another 40 mm round.  A couple seconds after that, another unidentified DOE Defendant law enforcement officer fired yet another 40 mm round at LUKE, while another unidentified DOE Defendant law enforcement officer shot the boy with a second Taser in dart

mode.  LUKE did not react, as any reasonable officer could see, because he was paralyzed.  Then, as LUKE SMITH continued to lay motionless, bleeding to death, and obviously severely wounded on the ground, Defendant officer ZAMORA deployed his CANINE *Kato* while on leash to bite and attack LUKE again.  *Kato* bit and thrashed LUKE SMITH'S right arm.  As the boy lay motionless and helpless, *Kato* thrashed his arm around for about 20 seconds, until Defendant ZAMORA finally had to physically pull *Kato* off.

34.     On information and belief, Defendant VIGIL shot and killed LUKE SMITH, because VIGIL was concerned that LUKE might attempt to injure *the police canine* that was biting LUKE.

35.     Decedent LUKE SMITH posed no significant or immediate threat of death or serious bodily harm to Defendant officers or other persons at the time he was shot with an assault rifle bullet by Defendant VIGIL.  Decedent LUKE SMITH had not made any movement or gesture under the circumstances that a reasonable officer would perceive as posing an immediate threat to another person to justify the use of deadly force.  LUKE SMITH never threatened any officer with the knife or made any gesture with the knife that would cause a reasonable officer to perceive he was facing an immediate threat of death or serious bodily harm.  Defendants unlawfully seized and used excessive force against LUKE SMITH, including but not limited to, firing multiple, deliberate 40 mm rounds at Decedent; at least two Tasers discharges for at least 5 seconds each time, in dart mode; two canine deployments, and a fatal shot with an AR-15—all without warning that the use of serious force would be employed; without giving LUKE SMITH the opportunity to comply; and without legal justification, causing great pain and suffering to LUKE SMITH and causing his death.

36.     Despite possibly holding a four-inch pocket knife in his hand, on information and belief LUKE SMITH posed no immediate threat to anyone at any time.  At all times, the Defendant law enforcement officers were standing far enough away from him that he could not have harmed them.  LUKE SMITH never attempted to harm any officer either.  By approaching LUKE SMITH

and deploying multiple 40 mm "less lethal" round, tasers, and a police CANINE, defendant law enforcement officers recklessly escalated the situation, causing LUKE SMITH, predictably, to involuntarily react to the simultaneous uses of severe, painful, and frightening force that Defendant officers directed at him, including Tasing him, shooting him with more beanbag rounds, and attacking him with a trained police canine, thereby creating the situation in which Defendant VIGIL chose to use lethal force. As a result of Defendants' unreasonable, provocative, and excessive tactics, Defendants created the situation where deadly force was used; deadly force would not have been used but for Defendant officers' unreasonable, provocative, and excessive tactics and uses of severe force leading up to the deadly force.

37. On information and belief, the Defendant law enforcement officers delayed in getting medical care for LUKE SMITH after he was shot with multiple 40 mm rounds, an AR-15, Tased, and attacked twice by a canine. After he was disarmed, severely wounded, paralyzed, and harmless, Defendant officers wasted time handcuffing him behind his back, and they failed to have had an ambulance staged nearby. Defendants felt his lifeless, paralyzed arms as they handcuffed him without any resistance. Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 failed to provide medical assistance while waiting for the ambulance to arrive, and during that time kept LUKE on his stomach with his hands cuffed behind his back.

38. LUKE SMITH was pronounced dead at 3:54 a.m., November 19, 2016, and he endured conscious pain and suffering during the "minutes" before he died.

39. On information and belief, neither Defendant VIGIL, nor any other defendant law enforcement officer, consulted with a supervisor about tactics to be employed to resolve the situation. On information and belief, no supervising officer from any agency assumed command and control of the situation. Further, Defendant VIGIL and a host of other defendant law enforcement officers were on scene for at least 15 minutes before Defendant VIGIL shot and killed

LUKE SMITH.  Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 failed to coordinate their actions and tactics.  LUKE SMITH was contained on a rural roadside, in tall vegetation, with no one around except for defendant law enforcement officers.  Defendant law enforcement officers on scene could have easily waited him out, talked him down, or simply kept him contained to wait for the drugs to wear off.  "A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury."[2]  Instead, Defendant officers unnecessarily, unsafely, and provocatively approached LUKE SMITH and chose to use excessive force against him.  Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 had contained the boy, yet they failed to follow generally accepted law enforcement standards and training to de-escalate the situation, to continue calm communication with the boy, to extend the time of the situation for the safety of all, to coordinate with each other, to provide and/or seek appropriate supervision, to wait to allow a more senior law enforcement officer to arrive on scene to establish a clear chain of command, or to allow a mental health practitioner or other better-trained negotiator to arrive on scene.

40.     Working as a team, Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10, each with fundamental involvement in the operation, individually and collectively used unreasonable and excessive tactics and force to handle the situation with LUKE SMITH, including: failing to tactically move and position themselves to avoid unnecessarily placing themselves and each other in positions of potential risk (instead, Defendants placed themselves in positions of relative potential danger without tactical benefit, thereby increasing the risk to LUKE SMITH that they might choose to shoot their way out of a situation that they themselves had created); failing to properly and reasonably assess the situation, including that LUKE SMITH was known to be

---

[2] *Deorle*, 272 F.3d at 1281.

temporarily mentally disturbed due to his ingestion of drugs, that LUKE SMITH was not a criminal but rather was a mentally disturbed child, that it was the middle of the night, on an empty country road, that LUKE SMITH made no threatening movements while holding the knife, and that mere possession of a knife – even if previously used to harm another person – does not justify the use of significant or deadly force; failing to properly communicate with LUKE SMITH, including using de-escalation communication techniques they had previously been taught (instead, multiple Defendants shouted threats and conflicting commands); failing to avoid needlessly escalating the situation (instead, Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 each either used, or ordered the use of, premature, unnecessary, and unreasonable force against LUKE SMITH, including by 40 mm rounds, Tasers, and police canine); and failing to coordinate their conduct in a proper plan consistent with generally accepted law enforcement standards or formulate any reasonable plan to safely handle LUKE SMITH (instead, each Defendant acted without a uniform plan as to how to safely address the situation with LUKE SMITH, and Defendant ZAMORA ordered his dog to attack prematurely before being ordered or asked to do so by Defendant VIGIL). Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 failed to follow generally accepted law enforcement standards and training for safely handling LUKE SMITH as a mentally and/or emotionally disturbed person.

41.     Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10's unlawful and provocative tactics and collective uses of force were totally unnecessary and unreasonable under the circumstances, caused the use of unnecessary and excessive deadly force, were conscience shocking, and done without a legitimate law enforcement purpose.

42.     The totality of force used and unlawfully permitted by Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 against LUKE SMITH was unnecessary, unjustified and objectively unreasonable under the circumstances.  Collectively, these Defendants subjected

LUKE SMITH to six shots from a 40mm high impact munitions gun, two separate Tasings in probe mode, two separate canine attacks with multiple bites each time, and one bullet shot to the back from an assault rifle.

43.    Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 also failed to intervene to stop and report other Defendants' uses of excessive force, unlawful actions, and violations of LUKE SMITH's rights.  Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 all were integral participants in unlawful uses of force, either directly and/or each was present, observed, assisted and permitted violations of Plaintiff's rights by other integrally involved Defendants, and each Defendant failed to intervene, protect Plaintiff, and report known violations of Plaintiff's rights by other Defendants.

44.    At all material times, and alternatively, the actions and omissions of each defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, deliberately indifferent to Decedent's and Plaintiff's rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

45.    As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiff sustained the following injuries and damages, past and future, among others:

        a.    Wrongful death of LUKE SMITH;

        b.    Hospital and medical expenses (Survival claims);

        c.    Coroner's fees, funeral and burial expenses (Survival claims);

        d.    Loss of familial relationships, including loss of love, companionship, comfort, affection, consortium, society, services, solace, and moral support (based on wrongful death and loss of familial association);

        e.    Violation of constitutional rights;

        f.    Pain and Suffering, including emotional distress (based on individual §1983 claim for loss of familial association);

g.   LUKE SMITH's loss of life, pursuant to federal civil rights law (Survival claims);

h.   LUKE SMITH's conscious pain and suffering, pursuant to federal civil rights law (Survival claims);

i.   All damages, penalties, and attorneys' fees and costs recoverable under 42 USC §§ 1983, 1988, 12205, 29 U.S.C. § 794a, the ADA, the RA, California Civil Code §§ 52, and 52.1, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

**COUNT ONE**
**-- 42 USC §1983 --**
**PLAINTIFF AGAINST DEFENDANTS VIGIL, HERNANDEZ, ZAMORA, AND DOES 1-10**

46.    Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

47.    By the actions and omissions described above, Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 violated 42 USC §1983, depriving Decedent of the following clearly established and well-settled constitutional rights protected by the First, Fourth and Fourteenth Amendments to U.S. Constitution:

a.   Decedent's right to be free from excessive and unreasonable force in the course of arrest or detention as secured by the Fourth Amendment;

b.   Decedent's right to be free from the use of unlawful deadly force as secured by the Fourth Amendment;

c.   The right to be free from wrongful government interference with familial relationships, and Plaintiff's and Decedent's right to companionship, society and support of each other, as secured by the First and Fourteenth Amendments.

48.    By the actions and omissions described above, Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 violated 42 USC §1983, depriving Plaintiff of the following clearly established and well-settled constitutional rights protected by the First and Fourteenth Amendments to U.S. Constitution:

COMPLAINT AND JURY DEMAND                                                                    17

a.  The right to be free from wrongful government interference with familial relationships, and Plaintiff's right to companionship, society and support of each other, as secured by the First and Fourteenth Amendments.

49.    Defendants subjected Plaintiff and Decedent to their wrongful conduct, depriving Plaintiff and Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff (individually and on behalf of LUKE SMITH, Deceased) and others would be violated by their acts and/or omissions.

50.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff sustained injuries and damages as set forth at paragraph 45, above.

51.    The conduct of Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 entitles Plaintiff to punitive damages and penalties allowable under 42 USC §1983 and California law.  Plaintiff does not seek punitive damages against the COUNTY OF SANTA CRUZ, Defendant SHERIFF HART, the CITY OF CAPITOLA, or the CITY OF WATSONVILLE.

52.    Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 USC §1988 and applicable federal and California codes and laws.

**COUNT TWO
- 42 USC §1983 (Municipal and Supervisory Liability) –
PLAINTIFF AGAINST DEFENDANTS COUNTY OF SANTA CRUZ,
<u>SHERIFF HART, AND DOES 1-10</u>**

53.    Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

54.    On April 21, 2017, Sheriff HART and the SCCSO released a public statement describing the results of the Sheriff's Office's Serious Incident Review Board (SIRB) findings "following the officer-involved shooting of Luke Smith."  The SIRB recommended that "[t]he Sheriff's Office should improve supervision and coordination at a critical incident," including:

1.1.    The officer-in-charge at a critical incident should be designated and identified on the radio;

1.2     A supervisor should respond to a critical incident to assume command and control; and

1.3     Other law enforcement agencies should play a support role when responding to Sheriff's Office requests for assistance.

The SIRB also recommended that "[t]he Sheriff's Office should improve its abilities to manage the use of a canine at a critical incident," including by:

2.1     Providing training to deputies and supervisors concerning the appropriate use of a canine on persons under the influence of hallucinogens, experiencing a mental health crisis, or armed with a weapon; and

2.2.     The officer-in-charge at a critical incident should identify the objective of using a canine and consult with the canine handler prior to deployment whenever there is time to safely do so.

The SIRB also recommended that "[t]he use of the patrol rifle should be monitored by a supervisor," including that:

3.1     A deputy should announce intent to deploy a patrol rifle and/or less-lethal shotgun on the radio and receive an acknowledgement from dispatch, who will notify the supervisor.

The SIRB also recommended that "[l]ife-saving efforts of injured suspects should not be unnecessarily delayed," including that:

4.1     Medical personnel should be requested to stage in a safe location near a critical incident that may involve the use of deadly force; and

4.2     The application of restraints should not delay or interfere with life-saving efforts and should be removed if they do.

The SIRB also recommended that "[t]he Sheriff's Office should provide training to improve its abilities to respond to critical incidents," including to:

5.1     Develop a reality-based use of force training program that includes lecture, scenarios and demonstrated proficiencies to prepare deputies and supervisors to respond to dynamic incidents *as a team*; and

5.4     Include a commitment statement about the duty to preserve life at use of force training.

Defendant SHERIFF HART accepted all of the SIRB recommendations after the LUKE SMITH shooting review.  The SCCSO says it has now started training officers "how to respond to volatile situations in which emotionally distressed persons are behaving erratically and often dangerously but do not possess a firearm," for the purposes of "[r]educing the need to use deadly force, upholding the sanctity of life, building community trust, and protecting officers from physical, emotional, and legal harm."

55.     In its April 21, 2017, press release, the SCCSO stated that "[d]eputies respond to more than 200 mental health related calls per month. Data analysis indicates that mental health or substance abuse issues were a factor in 75% of officer-involved shootings that have occurred during the past 30 years in Santa Cruz County."

56.     All of the SIRB recommendations to the SCCSO after the LUKE SMITH shooting were obviously necessary and feasible under generally accepted law enforcement standards long before the LUKE SMITH shooting.  The failure of the COUNTY OF SANTA CRUZ, SCCSO, and SHERIFF HART to already have implemented such procedures and training before the LUKE SMITH shooting represents deliberate indifference to the rights and safety of the public, Plaintiff, and Decedent, in the face of the obvious need for such procedures and training.  Furthermore, Defendants COUNTY OF SANTA CRUZ, SCCSO, and SHERIFF HART's deliberate indifference to the need for such procedures and training was a moving force and a proximate cause of the unnecessary and unjustified shooting of LUKE SMITH.

57.     The unconstitutional actions and/or omissions of Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 and other officers and deputies employed by or acting on behalf of Defendants COUNTY OF SANTA CRUZ, CITY OF CAPITOLA, and CITY OF WATSONVILLE, on information and belief, were also pursuant to the following customs, policies, practices, and/or procedures of the SCCSO, stated in the alternative, which were directed,

encouraged, allowed, and/or ratified by policy making officers for the COUNTY OF SANTA CRUZ, and the SCCSO, including but not limited to Defendant HART:

    a.    To use or tolerate the use of excessive and/or unjustified force, especially when dealing with emotionally and/or mentally disturbed persons;

    b.    To use or tolerate the use of unlawful deadly force, including permitting and training officers (i) to use deadly force when faced with less than an immediate threat of death or serious bodily injury to a person, (ii) to use deadly force prematurely, or as a 'first resort,' or when facing a mere potential threat; and (iii) to use deadly force without giving a proper warning when one would be feasible;

    c.    To fail to use appropriate and generally accepted law enforcement policies, procedures, and training in handling mentally ill and/or emotionally disturbed persons;

    d.    To cover-up violations of constitutional rights by any or all of the following:

        i.    by failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, and/or unlawful seizures;

        ii.    by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; and

        iii.    by allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful police conduct, by withholding and/or concealing material information;

    e.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department;

    f.    To use or tolerate inadequate, deficient, and/or improper procedures for handling, investigating, and reviewing complaints of officer misconduct made under California Government Code § 910 et seq.; and

    g.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (f) above, with deliberate indifference to the rights and safety of Plaintiff, Decedent, and the public, and in the face of an obvious need for such policies, procedures, and training programs.

58.     Defendants the COUNTY OF SANTA CRUZ, SHERIFF HART, and DOES 1-10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants VIGIL and DOES 1-10, and failed to properly supervise and lead supporting CPD and WPD personnel, with deliberate indifference to Plaintiff's constitutional rights, which were thereby violated as described above.

59.     The unconstitutional actions and/or omissions of Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 and other SCCSO, CPD, and WPD personnel, as described above, were approved, tolerated and/or ratified by policy-making officers for the SCCSO, including SHERIFF HART.  Plaintiff is informed and believes, and thereupon alleges, the details of this incident have been revealed to the authorized policy makers within the COUNTY OF SANTA CRUZ, including SHERIFF HART, and that such policy makers have direct and actual knowledge of the fact that the LUKE SMITH Tasing, biting, striking with impact munitions, and shooting were not justified, but represented an unconstitutional display of unreasonable, excessive and deadly force. Notwithstanding this knowledge, the authorized policy makers within the COUNTY OF SANTA CRUZ and the SCCSO, have approved of Defendant VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10's use of excessive and deadly force against LUKE SMITH, and have made a deliberate choice to endorse Defendants' tactics, force used, and shooting of LUKE SMITH and the basis for them.  By so doing, the authorized policy makers within the COUNTY OF SANTA CRUZ, and the SCCSO, including SHERIFF HART, have shown affirmative agreement with the individual defendant officers' conduct, and have ratified the unconstitutional acts of the individual defendant officers.

60.     The prior supervisory failures and deliberate indifference of SHERIFF HART and Does 1–10 were also a proximate cause of and moving force behind the violations of LUKE SMITH's and Plaintiff's rights by Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10,

because (1) SHERIFF HART and Does 1–10 were responsible for creating, approving, and enforcing the unconstitutional customs and policies described in paragraphs 54, 56-57, above, that were a proximate cause and moving force of the individual Defendants' violations of rights and Plaintiffs' and Decedent's injuries; (2) SHERIFF HART and Does 1–10 were responsible to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants VIGIL and DOES 1-10, but due to his deliberate indifference to the substantial risk of harm to the public, including people situated like Plaintiffs and Decedent, SHERIFF HART failed to reasonably, adequately, and appropriately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants VIGIL and DOES 1-10; and (3) SHERIFF HART and Does 1–10 ratified the Defendant officers' conduct and decisions in this matter as described in paragraph 59, above, after being fully informed of such and the basis for them, and after viewing the video of the shooting, thereby affirming Defendant officers' choices, unconstitutional decisions, and the bases for those unconstitutional decisions.

61.     The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct of Defendants CITY OF SANTA CRUZ, SHERIFF HART, and Does 1–10, were a moving force and/or a proximate cause of the deprivations of Plaintiff's clearly-established and well-settled constitutional rights in violation of 42 USC §1983, as more fully set forth in Paragraphs 47-48, above.

62.     As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of Defendants COUNTY OF SANTA CRUZ, SHERIFF HART, and DOES 1–10 as described above, Plaintiff (individually and as Successor in Interest) sustained

serious and permanent injuries and is entitled to damages, penalties, costs and attorneys' fees as set forth in paragraphs 49-52, above.

**COUNT THREE**
**--VIOLATION OF CIVIL CODE §52.1 --**
**PLAINTIFF AGAINST DEFENDANTS VIGIL, HERNANDEZ, ZAMORA, DOES 1-10, COUNTY OF SANTA CRUZ, CITY OF CAPITOLA, and CITY OF WATSONVILLE**

63.     Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

64.     By their acts, omissions, customs, and policies, each Defendant acting in concert/conspiracy, as described above, interfered with, attempted to interfere with, and violated Plaintiff's rights under California Civil Code §52.1, and the following clearly-established rights under the United States Constitution and the California Constitution:

a.   Decedent's right to be free from excessive and unreasonable force in the course of arrest or detention as secured by the Fourth Amendment to the United States Constitution and by the California Constitution, Article 1, Section 13 (pursuant to survival claim);

b.   Decedent's right to be free from the unreasonable use of deadly force as secured by the Fourth Amendment to the United States Constitution and by the California Constitution, Article 1, Section 13 (pursuant to survival claim);

c.   Plaintiff's and Decedent's right to be free from wrongful government interference with familial relationships, and their rights to companionship and society with each other, as secured by the First and Fourteenth Amendments (pursuant to survival claim and Plaintiff's familial association claims).

d.   Decedent's right to protection from bodily restraint, harm, or personal insult, as secured by Cal. Civil Code § 43.

65.     Excessive force which violates the Fourth Amendment violates § 52.1.[3] Separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of

---

[3] *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013)).

Plaintiff's rights, Defendants violated Plaintiff's rights by the following conduct constituting threats, intimidation, or coercion:

    a.  Threatening LUKE SMITH in the absence of any threat presented by LUKE, or any appropriate justification;

    b.  Using deliberately reckless and provocative tactics under the totality of the circumstances to apprehend LUKE SMITH in violation of generally accepted law enforcement training and standards, and in violation of LUKE SMITH'S rights;

    c.  Causing at least one officer to point a gun at LUKE SMITH, threatening the use of deadly force, without justification;

    d.  Threatening violence against LUKE SMITH, with the apparent ability to carry out such threats, in violation of Civ. Code § 52.1(j);

    e.  Causing LUKE SMITH to be Tased, bitten, and shot by painful "less lethal" projectiles multiple times, without warning and without justification;

    f.  Subjecting LUKE SMITH to multiple uses of excessive deadly and non-deadly force during an inherently coercive arrest; and

    g.  Violating Plaintiff's and LUKE SMITH'S rights to familial association by their use of conscience shocking excessive force and deliberately provocative tactics.

66.    Alternatively or concurrently, the threat, intimidation, and coercion described herein was not necessary or inherent to Defendants' violation of Plaintiff's rights, or to any legitimate law enforcement activity.

67.    Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

68.     Defendants COUNTY OF SANTA CRUZ, CITY OF CAPITOLA, and CITY OF WATSONVILLE are vicariously liable for the violation of rights by their employees and agents pursuant to Cal. Gov. Code § 815.2.

69.     As a direct and proximate result of Defendants' violation of California Civil Code §52.1 and of Plaintiff's and Decedent's rights under the United States and California Constitutions, Plaintiff (individually and as Successor in Interest) sustained injuries and damages, and against each and every Defendant is entitled to relief as set forth above at paragraphs 49-52 and punitive damages against Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 in their individual capacities, including all damages allowed by California Civil Code §§ 52, 52.1, and California law, not limited to costs, attorney's fees, three times actual damages, and civil penalties.

**COUNT FOUR**
**--NEGLIGENCE; PERSONAL INJURIES --**
**PLAINTIFF AGAINST ALL DEFENDANTS**

70.     Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

71.     At all times, each Defendant owed Plaintiff and Decedent the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

72.     At all times, each Defendant owed Plaintiff and Decedent the duty to act with reasonable care.

73.     These general duties of reasonable and due care owed to Plaintiff and Decedent by all Defendants include but are not limited to the following specific obligations:

a.     to refrain from using excessive and/or unreasonable force against LUKE SMITH;

b.     to refrain from unreasonably creating or escalating the situation where force, including but not limited to deadly force, is used;

c.    to refrain from abusing their authority granted them by law;

d.    to refrain from violating Plaintiff's rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

74.    Additionally, these general duties of reasonable care and due care owed to Plaintiff and Decedent by Defendants COUNTY OF SANTA CRUZ, CITY OF CAPITOLA, CITY OF WATSONVILLE [each public entity acting through its employees and agents], SHERIFF HART, and DOES 1–10, include but are not limited to the following specific obligations:

a.    to properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline their employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

b.    to make, enforce, and at all times act in conformance with policies, training, and customs that are lawful and protective of individual rights, including Plaintiff's.

c.    to refrain from making, enforcing, and/or tolerating the wrongful policies, training, and customs set forth at paragraphs 54, 56-57, above.

75.    Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff.  Defendants COUNTY OF SANTA CRUZ, CITY OF CAPITOLA, and CITY OF WATSONVILLE are vicariously liable for the wrongful acts and omissions of their employees and agents pursuant to Cal. Gov. Code section 815.2.

76.    As a direct and proximate result of Defendants' negligence, Plaintiff and Decedent sustained injuries and damages, and against each and every Defendant Plaintiff is entitled to relief as set forth above at paragraphs 49-52, and punitive damages against Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10.

**COUNT FIVE**
**-- ASSAULT AND BATTERY --**
**PLAINTIFF AGAINST DEFENDANTS**
**VIGIL, HERNANDEZ, ZAMORA, DOES 1-10, AND**
**COUNTY OF SANTA CRUZ, CITY OF CAPITOLA, and CITY OF WATSONVILLE**

77.     Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

78.     The actions and omissions of Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10, as set forth above, constitute assault and battery.  Defendants COUNTY OF SANTA CRUZ, CITY OF CAPITOLA, and CITY OF WATSONVILLE are vicariously liable pursuant to Cal. Gov. Code section 815.2.

79.     As a direct and proximate result of Defendants' assault and battery of LUKE SMITH, Plaintiff sustained injuries and damages, and is entitled to relief as set forth above at paragraphs 49-52, and punitive damages against Defendants VIGIL, HERNANDEZ, ZAMORA, and DOES 1-10 .

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant herein, jointly and severally:

   a.     compensatory and exemplary damages in an amount according to proof and which is fair, just and reasonable;

   b.     punitive damages against the individual officers described herein under 42 USC §1983 and California law in an amount according to proof and which is fair, just, and reasonable (punitive damages are not sought against the public entities);

   c.     all other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 USC §§ 1983, 1988, Cal. Code of Civ. Proc. §§ 377.20 et seq., 377.60 et seq., and 1021.5, Cal. Civil Code §§ 52 et seq., 52.1, and as otherwise may be allowed by California and/or federal law;

   d.     Injunctive relief, including but not limited to the following:

         i.     an order prohibiting Defendants County of Santa Cruz and its Sheriff from engaging in the unconstitutional customs, policies, practices, procedures, training and supervision as may be determined and/or adjudged by this case;

1

2
          ii.     an order requiring Defendant County of Santa Cruz to institute and enforce appropriate and lawful policies and procedures for the use of deadly force;

3

4
          iii.   an order prohibiting Defendants and their deputies and police officers from engaging in the "code of silence" as may be supported by the evidence in this case;

5

6
          iv.   an order requiring Defendant County of Santa Cruz to train all SCCSO law- enforcement officers concerning generally accepted and proper tactics and procedures and this Court's orders concerning the issues raised in injunctive relief requests i-iii, above;

7

8

9
        e.     such other and further relief as this Court may deem appropriate.

10

11
DATED: November 15, 2017         HADDAD & SHERWIN LLP

12

13
               /s/  Michael J. Haddad

14
               Michael J. Haddad
               Attorneys for Plaintiff

15

16
**JURY DEMAND**

17
    Plaintiff hereby request a trial by jury.

18

19

20
DATED: November 15, 2017         HADDAD & SHERWIN LLP

21
               /s/  *Michael J. Haddad*

22
               Michael J. Haddad
               Attorneys for Plaintiff

23

24

25

26

27

28